The score is now in session. Please be seated. Thank you. Madam Clerk, please call the next case. Mr. Fisher, you may proceed. Good afternoon, Your Honors. May it please the Court, Counsel. I'm representing the defendant in this case, Christopher Knight. In 1993, Mr. Knight pled guilty to the first-degree murder of Henderson Simmons at a time when both men were inmates at Stateville Correctional Center. Knight was sentenced to a term of 40 years' imprisonment. The defendant subsequently filed a pro se post-conviction petition, raising the claim of actual innocence, asserting that he had nothing to do with the murder of Henderson Simmons, and that he now had former Stateville inmates willing to testify on his behalf. The Circuit Court Judge Lekwar summarily dismissed the petition at the first stage on the basis that it was untimely. The defendant appealed, and this Court vacated the dismissal order, finding that untimeliness is not a legitimate basis for first-stage dismissal, and secondly, that the judge had erred by failing to include findings of fact in his written dismissal order. Therefore, this Court remanded the cause for second-stage proceedings. Now, on remand, the public defender was appointed to represent Mr. Knight, and the public defender filed an amended post-conviction petition, supported by affidavits from former Stateville inmates, also supported by an affidavit from a former guard at Stateville, the petition alleging actual innocence, and also that the plea was coerced by a prison gang and was involuntary. The State responded to the amended petition with a motion to dismiss, putting forth three different reasons why the case should not proceed to an evidentiary hearing. Following arguments on the motion, Judge LeCoir granted it. Now, he didn't specifically say whether he agreed with one of the State's reasons, or two of the reasons, or all three of the reasons, but he did direct the State to draft a dismissal order, setting forth findings consistent with the State's arguments. Presumably, then, he agreed with all three of those arguments. Defendants admits that none of those arguments were valid. None of those arguments should have prevented the defendant from receiving an evidentiary hearing on his claims because he carried his burden at the second stage of establishing, making a substantial showing of a constitutional violation. He therefore asked this court, applying to no vote review, to vacate the second stage dismissal order and to remand this cause for a third stage evidentiary hearing. Now, the first argument made by the State in the trial court and again on the appeal is that the petition was untimely. Now, it's true the petition was filed after the expiration of the statutory limitations period because the guilty plea took place in 1993. The pro se petition was filed in 2003. Post-conviction hearing act, however, allows a defendant to file a late petition if he can show good cause, if he can establish that the late filing was not due to his culpable negligence. Defendants admits he made such a showing in his petition. He alleged in his petition that the murder of Henderson Simmons was a gang hit and that following the murder, one of the gang members relayed a message from the gang chief that he had to take responsibility, that he was the one who was going to have to stand trial for this charge despite the fact that he had no involvement in this offense. He further testified that the gang had a great deal of power and that the gang chief, Mr. Lowe, had a great deal of power even within the institution and he therefore feared that the same fate that befell Henderson Simmons would befall him as well if he rebuffed the gang, if he did not take responsibility. He further alleged in his petition, in his affidavit, that during the course of the proceedings in the trial court, the gang chief, Mr. Lowe, monitored proceedings and ultimately directed him to plead guilty. These allegations were supported by an affidavit from a former Stateville inmate who stated that he was the one who had relayed the message tonight that he had to plead guilty. It was also supported by an affidavit from a former Stateville prison guard who stated that at that point in time, the gangs had a great deal of power at Stateville. They had access to weapons, the ability to be out of their cells, the ability to carry out serious crimes within the institution. Mr. Knight further alleged in his amended petition that in the interim period of time, the gang chief, Robert Lowe, had died and the authorities at Stateville had taken control of the prison back from the gangs, and therefore, Lowe these many years later, he finally felt safe in bringing his claim of actual innocence and of an involuntary guilty plea. He further stated that he now had witnesses willing to come forward, and I think the clear implication is that these witnesses who signed affidavits would not have come forward earlier for fear of retribution from the gang. Didn't he also allege in his petition that he was represented by an attorney retained by the gangster disciples? That's true as well. And that she did not investigate potential witnesses? He alleged that as well. When the state argued the motion to dismiss in front of Judge Leclerc, I believe the standard is that you assume everything in the petition is true or he was required to do so. Yes. Did the state introduce any evidence to contradict the contents of the petition with regard to representation by somebody retained? The state offered no evidence at all. The state made legal arguments as to why the petition was not sufficient to proceed to the third stage. The state offered no evidence. So when Judge Leclerc signed the order prepared by the state, did that order include findings that the petition was not timely because the state rebutted the allegations that must be presumed to be true in the post-conviction petition? Interestingly, although Judge Leclerc orally directed the state to draft the order and to include findings, no findings were actually set forth in the order. On either grounds of untimeliness or whether the petition stated plain. That's correct. And that's why I question whether the judge agreed with one or all three or perhaps two of the three states' arguments. It's not clear. Do you think the defense counsel had been there the day Judge Leclerc directed counsel for the state to prepare the order that could have been discussed? I'm sorry, Your Honor, I missed the first part of that. If defense counsel had been present in court on the day Judge Leclerc communicated with the assistant state's attorney to prepare that order, perhaps defense counsel could have probed the court for reasoning? Perhaps counsel could have. I don't have a specific recollection of whether counsel was there. Counsel representing the state today represented the state in trial. The transcript that we have received doesn't show that counsel was there. And nobody seems to have objected to that. The following arguments, Judge Leclerc took the case under advisement, subsequently came back into court, directed the state to draft the order, and I don't recall specifically whether that order indicates that Mr. Haas, who was the public defender represented, the defendant was present. The transcript may indicate that. As I said, counsel may have recollection. I don't know offhand. The defendant, therefore, submits that. I'm sorry. It doesn't appear that the judge made any findings. Is that the import of your assuming that it may have been one or two or three? That's right. He simply directed the state to draft an order to include findings, to set out findings consistent with the state's arguments, but no more specific direction than that, and no specific findings contained in the order, simply that the motion was argued and granted. The reasonable inference would be that the judge then agrees with all allegations, findings that the state is offering. And that's why I address all three arguments today. In summary, as to the timeliness issue, the defendant submits that he put forth very good cause for the late filing, and, therefore, the late filing of the petition should not have stood in the way of an evidentiary hearing. Now, the second argument the state made in the trial court and again on appeal is that by pleading guilty, the defendant automatically forfeited the right to later raise a claim of actual innocence. Now, the state does not cite any case law specifically saying that. The state does rely on two Illinois appellate court decisions, which in dicta express some doubt as to whether an individual who pleads guilty may later make a claim of actual innocence. But no Illinois case is specifically saying that the defendant is absolutely barred because he has pled guilty. The defendant on appeal has cited several cases from other jurisdictions, from other states, holding that a defendant who pleads guilty may, in fact, later raise a claim of actual innocence. And some of those cases, I think, recognize the obvious, and that is that individuals have different reasons for pleading guilty. Regardless of whether the phrase offered plea is stated during the plea hearing, and in this case it was not, but regardless of whether it is or not, certainly some defendants plead guilty for reasons other than the question of guilt or innocence. Now, the state argues, well, if he pled guilty and if he's now saying he's innocent, well, he must have known back then he was innocent, therefore he shouldn't have pled guilty. He should have gone to trial. This isn't anything new. Again, he has made the very serious assertion that although he knew he was innocent back then, just as he knows it now, he was pressured into pleading guilty by the gang. And he felt in fear of his life if he did not do so. The state also notes that where a defendant proceeds to trial and is found guilty and then raises a claim of actual innocence, the judge at the hearing deciding whether the defendant is entitled to a new trial considers the new evidence in the context of the evidence that was presented at trial  and whether the trier of fact should consider the new evidence in conjunction with the original trial court evidence. The state argues that where a defendant pleads guilty, the judge cannot engage in the same analysis because there was no trial. Now, this argument was also considered in some of the out-of-state cases on which the defendant relies.  Whenever a defendant pleads guilty, the judge must hear a factual basis for the plea. And therefore, a judge considering newly obtained evidence in deciding whether or not a defendant should be allowed to withdraw the plea, he has the factual basis and therefore has a pretty good idea as to the evidence that would have been presented by the state had the case proceeded to trial. Further, some of those out-of-state cases have recognized, I think in fairness, that at such a hearing, the state should have the right to present some evidence to fill in the blanks if need be in its factual basis, if its factual basis is not as complete as the evidence would have been had the case gone to trial. So this argument by the state that the analysis applied where a defendant goes to trial makes a point of actual innocence, that you can't engage in that same analysis where a defendant has pled guilty. I think that argument should not be accepted by this court. Now, ironically, the Illinois appellate court cases on which the state relies specifically hold, as do other Illinois cases, that the defendant who pleads guilty may later file a post-conviction petition seeking to withdraw his plea based on the argument that the plea was coerced, that the plea was involuntary. Counsel, you have two minutes. Thank you. And we have that very situation in this case. The defendant is arguing not only that he was actually innocent, but that the plea was coerced. And, in fact, that's why he pled, even though he knew back then that he was innocent. So here the defendant has made that claim. The state makes kind of a curious argument that in a post-conviction petition, if a defendant makes a claim of constitutional violation, he can't also make another constitutional claim. Certainly, the post-conviction statute really only allows the filing of a single petition, so the defendant has many claims to raise. He better raise them all on that one petition. But here, in particular, these claims go hand in hand. Again, the claim that it was coerced explains why he waited so long and why he pled guilty, and, therefore, the two claims here certainly dovetail no reason why he should not be able to raise both claims here. So the fact the defendant pled guilty, the defendant submits, should not stand in the way of an evidentiary hearing. The final argument by the state is that the petition did not make a substantial showing of constitutional violation. The defendant strongly disagrees. Your Honors have the record, have the amended petition, the supporting affidavits. Again, he alleged that perhaps the most serious claim a criminal defendant could ever make, that he's incarcerated for a crime he didn't commit. He has witnesses now willing to come forth to support that claim. Whether they are credible, whether he is credible, that is a third-stage decision. As Your Honor pointed out earlier, the motion dismissed by the state admits, as true, all well-pleaded allegations. They're not rebutted by the record. Here, these claims are not rebutted other than the fact that he pled guilty, but he's now explained why he pled guilty. The defendant submits he certainly did state and make a substantial showing of a constitutional violation that should warrant a remand for an evidentiary hearing, and we therefore respectfully ask Your Honors to grant him that relief. I have one question on forfeiture. It's clear under Boclero's and the other cases that the state can forfeit the issue of timeliness. They don't have to challenge a post-conviction petition on that basis. Since the state was requested to draft the order in this case and did not prepare the order by addressing the timeliness issue, can it be said that they have not forfeited that? I'll leave that up to Your Honor. I certainly wouldn't disagree. Now, the state didn't really include any findings in the order. Did they forfeit all of their arguments? It's an affirmative defense that the state is charged with me. I understand. Well, all I can say is the state's resuscitating the timeliness argument on appeal. Again, the defendant would not argue with Your Honor on that point. Thank you, Mr. Fisher. Thank you. Ms. Osterberger, you may respond. Justice Wright, let me address the issue of the preparation of the order. I happened to be in court on a day when this was not scheduled, but after the hearing on the motion to dismiss when Judge Lacroix announced from the bench that he was making his ruling, the public defender who had represented the defendant was the public defender, Herman Haas. He was not present in court that day. His assistants were, but they were not familiar with this case. Did Judge Lacroix document that on the record? He didn't. He did not. But Your Honor had asked. Why did you allow the judge to direct you in that fashion? It's not my job to allow the judge to do anything, Your Honor. I viewed my role as being administerial, and he directed me to prepare an order. I did not ask him any questions about what he had said because I knew that Herman Haas wasn't there that day. Frankly, I didn't think it was my function to question whether or not Judge Lacroix could make his ruling. Sometimes you can respectfully suggest to the judge, you know, I know you're busy today, but, you know, Mr. Haas isn't here. Could we just postpone this for 20 minutes while I see if we can get it down? I suppose I could have done that. You certainly bring up a good point. I didn't. I did not want to question Judge Lacroix. Judge Lacroix made his ruling. He told me to make an order. I'm sorry, I interrupted you. Yes, you did. I apologize. Thank you. You were directed to draft an order according to the state's affirmance, really, right? He directed me to draft the order, but he didn't make any specific findings when he issued his ruling. We know that's true. Yes. But within your argument or whatever before the court, you made those three objections, I think Mr. Fisher was saying. That's true, I did. Okay. So is it not a reasonable inference that he's finding for the state on all three? I would agree with that, Your Honor, and I wanted to bring that point up to the court, which is while Judge Lacroix did not make any specific individual findings, he did say he agreed with the state's arguments, and again, I did not view my role in a ministerial capacity. But you're not going to argue that, I guess what I'm saying, you're not disagreeing that there's a reasonable inference that all of the state's arguments he found to be valid? No, in fact, I would ask the court to make that finding. Well, yeah, that's what you're going to argue on the field, but I mean, in terms of drafting the order. So why would you ask for the judge for any more? Well, I wouldn't. I simply wrote down what he told me. Okay. And the other point I wanted to make was really, he could have simply made his findings in the record and not directed me to put it in writing. I think in theory he could have done that as well. Again, I didn't want to offer any argument or address any substantive issues without my opponent being there. I thought that was the more appropriate way to handle the situation. Well, you basically prevailed, and you got all three there, and it seems like he's approved it. I believe he did. But I'd also point out this to you, Your Honor, that your view at appeal is de novo of his second-stage dismissal. So if Your Honor is on a de novo basis disagreeing with Judge Leclerc's findings, you can reverse. I'm not asking you to reverse, but you can. What were his findings that you included in the order? I believe that he indicated that he agreed with the state's arguments, which, again, were the three arguments that I had made to Judge Leclerc. You included no findings with regard to the timing of this issue. No, Your Honor, because he didn't orally tell me that, and I did not feel it was my place to raise any additional factual questions about the specifics of his order in the absence of counsel. So I did not do so. But his ruling itself, I think, stands for the proposition that he agreed with all three of the state's arguments. During the arguments, did he pronounce his findings orally before taking the matter under advisement? Did he indicate one way or another? No, Your Honor, I don't recall that he did. So basically the findings in the order are yours. No, ma'am. I didn't make any findings. What he had said was he agreed with the state's arguments. The findings were of Judge Leclerc's. Well, he told you to prepare an order that was consistent with the state's arguments. That's true, Your Honor, but then he didn't specify exactly what it is. I should have put in the order, and I did not, again, want to engage the judge in any specific question about what he wanted. I presented him with the order. He apparently deemed it to be sufficient because he signed it. His ruling was simply, I agree with the state's arguments. That is not an uncommon ruling for judges to make upon dismissing post-conviction petitions or other types of matters. Is it uncommon for them to do this without defense counsel present, or was this something unusual? The fact that I happened to be in court that day I think may have been unusual. I don't think it's uncommon for judges to make rulings without the parties present. They simply notify you sometimes. Sometimes they set dates. I prefer to have a date set because then I know to be in court. But it's not unheard of for a judge to simply issue his ruling and notify the parties of the ruling. Is voicing a ruling not considered an important part of the procedure? Well, I certainly think it is, Your Honor. So shouldn't both of the parties be present? I don't think the law requires both of the parties to be present for the judge to enter his ruling of record. If the judge had wanted to engage me in a question or an answer session about the specifics of the case, then that would have been a problem. But he didn't do that, and I did not attempt to engage him in that way because I didn't want that to happen. This is how Judge Lacroix decided he wanted to rule, and I did not question it. But you're saying our standard of review is denial. Correct. So it's probably fairly irrelevant. I would agree. I'd also like to point out this, that while the defendant did attempt to make some type of claim vis-a-vis trial counsel, plea counsel Linda Amdor in the trial court, his argument against the timeliness of the petition did not invoke the Linda Amdor claim. For the most part, the argument against the timeliness, my timeliness argument in the trial court, was the defendant drew an analogy to federal habeas proceedings and had argued that he was entitled to proceed in this matter on the actual innocence claim. Again, there are three arguments that the State had made regarding the sufficiency of the dismissal here. Number one is that this petition is untimely. My opponent doesn't even dispute that. He recognizes that the statute of limitations had expired prior to the filing of this petition. What he argues, Your Honors, is that he should avail himself or should be allowed to avail himself of the culpable negligence exception to the timeliness that was in effect at the time. And he says that his actual innocence claim makes a sufficient showing of lack of culpable negligence. I argue in my briefing against you, Your Honors, today, I don't believe that's true. I would point out this. The claim of actual innocence is not a new claim. This is not a case where the defendant did not know at the time of his plea whether or not he had stabbed the victim in this case. This is not a case in which he had contested his guilt unsuccessfully because he lacked a key piece of evidence. The defendant has always known whether or not he stabbed the victim, and he pleaded guilty to this offense. I would further point out this, that none of the affidavits that defendant presents to the court contain an allegation by the affiant. And one of those affidavits isn't even an affidavit. But none of the affidavits contain an allegation by the affiant that the affiant was unavailable at the time of the trial and would not, or that affiant would not have testified on defendant's behalf. The defendant tells you that, well, his own affidavit suggesting that they weren't available then should be good enough. But it's his obligation at the second stage of post-conviction proceedings when he's represented by counsel to gather together enough information to support his petition with affidavits and evidence in order to garner an evidentiary hearing. And it's a strict standard. You need to make a substantial showing of a violation of a constitutional right. I would argue to the court that the defendant's affidavits are sparse, and they're shaded, and they're deliberately vague. And if he wanted a hearing, he should have provided much more detail about this murder and who did it, if it was somebody other than him. I'm not telling you he needs excruciating detail. You will note that in none of the statements that were provided by the defendant does anyone identify who the real killer is. And in fact, the affidavits themselves are contradicted by the record. The biggest contradiction in the record to the affidavits is, of course, the defendant's plea of guilty, which I argued extensively before the trial court and here is an admission of his guilt. The defendant pleaded guilty. The court system treats that as an admission that he committed this crime and that he's pleading guilty. He did not offer an alford plea. In other words, he did not plead guilty before the trial judge and say, I'm pleading guilty, even though I did not do this, Your Honor, but I believe it to be in my best interests. This was a routine plea of guilty. And given that, the defendant's plea in the record stands as an admission. And his affidavit, which says that he didn't do it, is contradicted by his own plea of guilty. He provides an affidavit of his co-defendant in this case, Betty Collier. If Your Honors recall the facts of this case, the witnesses say that the defendant and Eddie Collier had managed to get the victim, Henderson Simmons, into the defendant's cell where the defendant stabbed Henderson Simmons and Eddie Collier beat Henderson Simmons prior to his death. Eddie Collier provides an affidavit where he says that the defendant didn't do this. Of course, Eddie Collier doesn't say who did. Eddie Collier says that the defendant was out of the area. Eddie Collier doesn't admit that Eddie Collier was in the cell and had anything to do with it. But yet, I gave the trial judge as an attachment to my motion to dismiss the record in Eddie Collier's case. Eddie Collier pleaded guilty to the reduced charge of armed violence in exchange for a recommendation of a plea for 15 years. Eddie Collier expressly told the judge during his plea that the state's factual basis was correct. The state's factual basis was that Eddie Collier had beat the victim and that the defendant had stabbed the victim. So Eddie Collier's affidavit is directly contradicted by trial court records. This is not a situation, as the defendant suggests in his reply brief, that is a question of credibility that should be brought to the court at the third stage of post-conviction proceedings in an evidentiary hearing. Courts routinely dismiss post-conviction petitions when the allegations in the petition are refuted by the record. If Eddie Collier had made multiple statements outside of court or multiple statements in his affidavits in support of the petition that could call into question some kind of credibility question, maybe then he would be able to say, yes, maybe this is something that should go to an evidentiary hearing. But Eddie Collier's affidavit is contradicted by an official court record that refutes the allegations. Thank you. And it's quite telling, Your Honors, that nowhere in the defendant's opening brief does he talk about the fact that Eddie Collier had admitted that he committed this offense. Walter Fields' affidavit is similarly deficient. He says the defendant was somewhere else, but he doesn't name the real killer, even though he says another unidentified inmate entered the cell with, importantly, Eddie Collier. So Walter Fields says that Eddie Collier was involved in this offense. Walter Fields' affidavit is inconsistent with Eddie Collier's affidavit, which is inconsistent with Eddie Collier's plea. None of these witnesses say they were ever unavailable at the time of the defendant's trial and plea. The purported affidavit from Charles Harris is not an affidavit. The Illinois Supreme Court has expressly stated that affidavits need to be signed by a notary, and the Second District in a case by the name of Mies Goda, which I cited in my brief, have said that affidavits offered in support of post-conviction petitions need to be sworn to in front of a notary. Charles Harris's was not. And the allegations in it contain mostly hearsay by unidentified people. He never mentions the name of this purported gang leader, Robert Lowe. He never says he was unavailable. He says the defendant didn't do this offense, but he doesn't bother to explain who did. There's no who, what, when, where, or why in any of these affidavits. David Tadlock, the guard's affidavit, says nothing about this case at all, and David Tadlock is on both people's witnesses' lists, both the parties' witnesses' lists at the time of the trial. It's all hearsay. And I would point out as well that the issue on appeal by the defendant does not – the issues raised on appeal by the defendant do not relate to any claims about plea counsel. So he doesn't make any claims about Linda Amdor like he did in the trial court. What he claimed in the post-conviction petition was that he was actually innocent. He did not claim in the post-conviction petition that his plea was involuntary. Despite counsel's efforts to argue to you otherwise, the petition is appended to the appendix of the brief that was filed by the defendant. It is plainly couched in terms of the defendant's claim of actual innocence. I would be happy to answer any questions that the court may have. Do you think you had to affirmatively establish to Judge LeClerc to receive a dismissal based on timeliness? I don't think that the timeliness claims here were such that required an evidentiary hearing, and I think I understand where Your Honor's question is. Because it's an affirmative defense. Yes. And I think in reading your motion to dismiss, I think you got it right. I think that you address that the amended petition – I'm reading from page four of your motion – that the amended petition fails to demonstrate the defendant lacks culpable negligence. I think you not only have to affirmatively establish it was untimely, but I think because it's your affirmative defense, you have to convince the judge that the defendant's petition does not establish culpable negligence. I think. That's what I wanted to discuss. I don't agree with that. And I would point out that the defendant hasn't argued that to you, so unfortunately it's not briefed. But I don't agree with that because it's – if you recall, there was a series of cases from the Illinois Supreme Court, one from a couple years ago that talked about counsel's obligations at second stage, where if the state had asserted untimeliness, it was counsel's obligation to try and do something about the culpable negligence issue. I think if we go back and look at those cases, Your Honor, I think you would see that those cases stand for the proposition that if the state says this is untimely, that's enough because we have to establish it's untimely. Nobody disputes this was untimely. It's then the defendant's burden, according to the statute, and I believe the case law, to then present evidence to the trial judge that he lacks culpable negligence. In other words, that it wasn't his fault that this is untimely. So I don't think it's my burden to show that – I'm going to get this wrong. I don't think it's my burden to show that he was negligent. I think it's his burden to show that he wasn't. Okay. And that contradicts your motion, I think. Okay. Because I think in the motion you say the people submit the appended petition, the amended petition, fails to demonstrate the defendant lacked culpable negligence. In other words, when we review the petition on its face, as Judge Lacroix was charged with doing, you were claiming that petition on its face doesn't establish lack of culpable negligence. Yes, it was, because that's – I don't have the statute in front of me, but I believe that's what the statutory language requires. The statute requires that if the petition is untimely, then it's the defendant's burden to show that he doesn't have culpable negligence. In other words, that he's not negligent. And when I look at his petition in paragraph 3, which is found at page C1176 in the record, it talks about Amir did not properly investigate the case to ascertain witnesses. And to me, although he doesn't use the words lack of culpable negligence, if his attorney didn't do her job, then how is he negligent? I have to disagree with a couple of your assumptions about that question, because I don't recall that the record shows that his argument to the trial judge was that he didn't – We don't look at the argument. We look at the petition. Well, but the – when I say argument to the trial judge – No, no, we look at the petition. Yes. I believe – let me answer it this way.  In those cases that talked about counsel's obligation to do something about culpable negligence, I think you have to look at the amended petition, as well as any answers that the defendant may indeed have to the state's motion to dismiss. And if you will look at the record, Your Honor, I believe that Herman Haas filed a written response to the state's motion to dismiss in which he talked about the timeliness of this case. And so when I say that the defendant had to present to the court a showing that he wasn't negligent, I think – certainly what I intended was for it to come off as the defendant's arguments and whatever he gives the court based upon – whatever the defendant gives the court in terms of pleadings and his arguments based upon that, they need to show that he wasn't negligent. And I don't think that that – I don't have to assume this is true unless – but he doesn't – if I recall correctly, he doesn't – in that particular allegation that Your Honor was referring to, he didn't make the connection and say, this is my excuse for timeliness. Maybe he did. I don't have that in front of me again. What paragraph is that? Three. Okay. Was that his pro se petition or the counsel's one, Your Honor? The amended petition. Okay. It goes directly to whether the plea was coerced. There are two paragraph threes. I apologize. Yes. But you'll notice, Your Honor, that that is – that is in the part of the petition talking about the substantive claim of actual innocence, which my argument is that his substantive claim was actual innocence and it wasn't really parsed into coercion. But I don't see here where he's saying that this particular factual allegation is something that he's alleging in an effort to show that he wasn't culpably negligent. I think you need to read this in context with his response to my motion to dismiss, which said, hey, you're untimely, make an excuse for it. And the defendant then filed a written response saying, I don't think it's untimely for reasons X, Y, and Z. So, frankly, I think it's overreading to say that the allegations in paragraph three here are intended to show a lack of culpable negligence. And he didn't make that argument to the trial judge. I mean, that wasn't what his lack of culpable negligence argument was to the trial judge. And it's not what his attorney argues to you on appeal either. So – You've answered my question. Okay. I'd be happy to answer any further questions. I don't believe there are any more. Okay. Thank you, Ms. Osterberger. Thank you. Mr. Fisher, you may reply. Your Honors, if I'm hearing the State correctly, the State is arguing that although the defendant pleaded facts establishing that the late father was not due to his culpable negligence because those facts came under an issue heading actual innocence, they can't be considered as to the issue of whether the petition, the late filing should be excused because it's not due to his lack of culpable negligence. Maybe that's not what the State is arguing. That's what I'm hearing. And it makes no sense to me. It's as hyper-technical, if not more so, than the State's discussion about the Harris Affidavit, which is entitled affidavit, has all of the language at the beginning and in the end that one would expect to see in an affidavit, but simply isn't notarized. And so the State says it couldn't be considered. Technically true, perhaps hyper-technical obstacle to an evidentiary hearing that is clearly deserved by this man. I'll let Your Honors make that decision clearly. I think these arguments by the State should not persuade. The State says that the affidavits of the individuals other than Mr. Knight do not specifically say that they were unavailable at the time of the plea, and that is true. Again, it certainly implied that they were unavailable given all of the other allegations in the defendant's petition, including the allegation that he now has witnesses who are willing to come forward and testify. Now, if the gain was so powerful, which his allegation is in the petition and must be accepted as true at this stage by the State, if the gain was so powerful as to put the fear of God into Mr. Knight, what, all these other inmates would have gotten a free pass? I don't think so. One of these individuals, Mr. Harris, who again the State claims it's not an affidavit in any event, Mr. Harris stated that he is the one who would lay the message to Mr. Knight, you better take responsibility. Now, would Mr. Harris have been at liberty months later in a plea hearing to say, oh, you know, this guy has everything to do with it? He would have been as much hot water as Mr. Knight would have been. Many of these objections by the State, I think, are frivolous. There's no logic there. They don't stand up to close examination. State claims in the affidavits the witnesses should have given more information about who committed the murder. It's not really Mr. Knight's job to do the State's job and find the murderer. It's his job, if he can do so, to convince the court that he's innocent, that it wasn't him. Having said that, the field's affidavit specifically points the finger at Mr. Collinger. Mr. Collinger's plea hearing to which the State refers, including the factual basis to which the State refers, although it was a plea to harm violence, frankly, that factual basis would have supported a plea to and a conviction of first-degree murder in this case. The State says the defendant doesn't talk much about credibility. Mr. Collinger and some of the other witnesses repeat, credibility is not a concern at second stage. The questions did make a substantial showing of a constitutional violation. Credibility is a third-stage concern. Again, the State admits as true the allegations and the supporting affidavits, and in deciding whether the petition made a substantial showing, of course, the court must look to both the petition itself and the supporting affidavits. In People v. Washington, which was perhaps the seminal case concerning a claim of actual innocence based on newly acquired, newly available, or newly discovered evidence, the Illinois Supreme Court stated that to ignore a claim of actual innocence would be fundamentally unfair, and that no person convicted of a crime should be deprived of life or liberty given compelling evidence of actual innocence. Defendant submits he's presented compelling evidence as incredible. That's third stage. That's not second stage. Thank you. Justice McMorrow wrote a specially concurring opinion in that case in which he talked about the principle of finality, which the State also dredges up as a sub-argument on appeal. Justice McMorrow wrote that the policy of finality must yield, as a matter of fundamental due process, to the manifest injustice that would result from continued incarceration of a demonstrably innocent person. Yes, part of the reason he's incarcerated is because he pled, but the fact of the matter is he's put forth very serious claims as to why he pled, that he was coerced, that he was innocent. He's got affiance to support his claim. Defendant submits that justice can only be served if Justice Letwar's dismissal order is once again vacated, this time the second stage dismissal order, and that this case is remanded for a third stage evidentiary hearing, and he therefore respectfully asks your honors to grant him this relief. Obviously, I'm sorry, Justice Whitledge, but obviously I'm very troubled by the fact that Justice Letwar was directed by this court to have a second stage hearing, and then have the hearing, make no findings on the record, and delegated the task of making findings to counsel for the state, putting her in an awkward position. How do we discourage that from happening? Well, I think if your honors write a rule 23, we'll get back to Judge Letwar. If it's a published decision, it will be seen by additional judges across the state, around the state. Maybe this court needs to educate judges. He didn't criticize counsel for not including findings in her order because she was in a terrible position. Well, not terrible. She won the case. He told her to make findings. She could have included findings. I think Mr. Knight's in a little worse position. Can we remand it back to Judge Letwar? To make findings? Judge Letwar is retired. Has been for over a year, so two years. Frankly, I think enough time has passed, and I think this man's entitled to a third stage hearing. I think it would just delay it, but that's mentioned within your honors' discretion. Thank you, Mr. Fishman. Thank you, counsel, both for your fine arguments in this matter this afternoon. It will be taken under advisement, and a written disposition shall receive it.